UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
RONNIE DUREN,

                    Petitioner,

                                        MEMORANDUM AND ORDER

          -against-                     18-CV-7218(JS)

JAMIE LAMANNA,

                    Respondent.
--------------------------------X
APPEARANCES
For Petitioner:      Ronnie Duren, pro se
                     #13-A-0396
                     Great Haven Correctional Facility
                     P.O. Box 4000
                     Stormville, New York 12582

For Respondent:      Sarah S. Rabinowitz, Esq.
                     Nassau County District Attorney's Office
                     262 Old Country Road
                     Mineola, New York 11501

SEYBERT, District Judge:

          Pending before the Court is pro se petitioner Ronnie

Duren's ("Petitioner" or "Duren") petition for a writ of habeas

corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Pet., D.E. 1.)

Following a jury trial, Petitioner was convicted of New York Penal

Law § 125.25, Murder in the Second Degree; two counts of New York

Penal Law § 110/125.25, Attempted Murder in the Second Degree; New

York Penal Law § 265.03(3), Criminal Possession of a Weapon in the

Second Degree; New York Penal Law § 265.09(1)(a), Criminal Use of

a Firearm in the First Degree; two counts of New York Penal Law

§ 120.10(1), Assault in the First Degree; and New York Penal Law

§ 110/120.10(1), Attempted Assault in the First Degree.

Petitioner raises nine issues: (1) he was subjected to unlawful search and seizure; (2) his statements made to detectives were involuntary and should have been suppressed as the fruit of an illegal arrest; (3) the trial court's <u>Sandoval</u> ruling denied him the right to a fair trial; (4) he was denied a fair trial by virtue of the admission of certain cell phone records; (5) the trial court's circumstantial evidence charge was improper; (6) the prosecutor committed misconduct; (7) the evidence was legally insufficient to prove his guilt beyond a reasonable doubt; (8) trial counsel was ineffective; and (9) appellate counsel was ineffective. (Pet., at ECF pp. 5-19.) For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

## I. The Offense Conduct

At approximately 11:00 p.m. on April 16, 2011, a rainy night, Hayden Forrest ("Forrest") (a/k/a Pete or Hayden Pierre), accompanied by Henry Fowler ("Fowler"), and Aggnon McLeod ("McLeod") (a/k/a AG), drove Fowler's royal blue Nissan Versa ("Versa") into the McDonald's parking lot on Peninsula Boulevard in Nassau County, New York. (Tr. 247.22-251:24.)[1] Fowler was

---

[1] Numbers in parentheses preceded by "Tr." refer to pages in the transcript of Petitioner's trial proceedings that started on October 2, 2012 and ended on October 24, 2012. (Tr. pp. 1-115, D.E. 9-2; pp. 117-294, D.E. 9-3; pp. 295-399, D.E. 9-4; pp. 400-542, D.E. 9-5; pp. 543-83, D.E. 9-6; and pp. 584-658, D.E; 9-7.)

seated in the front passenger seat of the Versa, McLeod was in the backseat, and Forrest was driving. (Tr. 277:10-15.) Upon entering the parking lot, Forrest parked the Versa parallel to a blue Ford Econoline van ("van"), owned by Michael Prophet ("Prophet"). (Tr. 160:10-22; 251:19-24; 516:4.) Forrest exited the Versa and entered the front passenger seat of Prophet's van, and observed Prophet seated in the driver's seat. (Tr. 251:25.)

Forrest then observed Prophet engage in a series of phone calls. (Tr. 277:25.) Almost immediately thereafter, Prophet received a call but did not answer, and then a black Mercedes Benz sedan entered the McDonald's parking lot. (Tr. 410:13-16; 252:7.) Petitioner[2] exited the Mercedes Benz and opened the front passenger door to the van, where he came face to face with Forrest, who told him to get in the back. (Tr. 279:3-8.) Petitioner then sat in the rear driver's side seat of Prophet's van, where he engaged in brief dialogue with Prophet and Forrest, then fired one bullet through the driver's seat, striking Prophet in his lower-back. (Tr. 280:6-281:1.)

---

[2] As will be discussed further, the evidence at trial demonstrated that Petitioner Ronnie Duren was the individual described above responsible for the shooting on April 16, 2011. The evidence at trial included cell phone records, which placed Petitioner at the location, and a description of Petitioner as the shooter by witness Hayden Forrest. See infra, at 5-7, 10-11.

After the first shot, Forrest opened the passenger door of the van and crawled underneath it. (Tr. 281:8-9.) While under the van, Forrest heard more gunshots. (Tr. 281:7-8.) Upon hearing the first gunshot, McLeod quickly exited the Versa and sprinted towards Peninsula Boulevard. (Tr. 254:5-7.) While attempting to exit his Versa, Fowler was shot. (Tr. 255:8-13.) Fowler proceeded to run across the street to a nearby utility truck for assistance. (Tr. 255:22-25.) Forrest, still under the van, observed Petitioner exit the van and enter a green SUV with two bags in his hands. (Tr. 281:13-17.) After Petitioner drove off, Forrest crawled out from underneath the van and drove himself to the hospital in Fowler's Versa. (Tr. 281:19-20.)

Following multiple 911 calls, Village of Hempstead Police Officer Peter Rees responded to the scene and found Prophet's body on the ground approximately fifteen to twenty feet away from the van. (Tr. 143:21-22.) Shortly thereafter, paramedic Richard Gresser ("Gresser") arrived at the scene, and lifted Prophet's shirt where he observed a bullet wound in the chest area. (Tr. 149:25-150:2.) Gresser then conducted an unsuccessful vital signs assessment of Prophet. (Tr. 149:11-14.)

The Nassau County Medical Examiner's Office performed an autopsy and determined that Prophet's cause of death was a gunshot wound that pierced his lower-back near the fourth lumbar vertebrae, perforated his right common iliac artery and small intestines, and

exited next to his umbilicus. (Tr. 312:18-313:2; 319:22-24; 318:11-13.)

Evidence collected at the scene included three shell casings, one bullet, and two cell phones. (Tr. 177:3-4; 174:16-17; 174:21-24; 175:17-19.) Two of the three shell casings were found behind the driver's seat (Tr. 177:6-7), and the third casing was found on the passenger side floor board. (Tr. 177:4.) After the van was processed, one additional casing and one additional projectile were recovered. (Tr. 177:3-12.) The additional casing was located on the rear seat behind the front passenger, where the bottom of the seat meets the seat back. (Tr. 178:18-20.) The additional bullet was found behind the front passenger kick plate. (Tr. 178:23-24.) Notably, a cell phone connected to a charger was recovered from the floor in front of the driver's seat (Tr. 179:11-12), and Sprint Nextel Subscriber records indicated the number was 516-841-7677 and belonged to Prophet (Tr. 388:1-389:3; 516:25-517:8; see also Supp. Hr'g Tr., D.E. 9-1, 7:5-22). The subscriber records also showed that at 11:10 p.m., mere minutes before the shooting, Prophet engaged in a nineteen second phone call with phone number (618) 309-0096 ("(618)"). (Tr. 399:3-7.) Almost immediately thereafter, at 11:11 p.m., that same number attempted to call Prophet back. (Tr. 410:13-16.) Further, during those calls, (618) was pinging cell phone towers within the range of the McDonald's on Peninsula Boulevard in Hempstead, New York. (Tr.

484:14-17; 485:15-486:2.)  Not only had (618) been the last number in contact with Prophet's phone before his death, but (618) had been in contact with Prophet's phone twelve times that day and had never been in contact with Prophet's phone prior April 16, 2011 when he was killed.  (Tr. 518:4-9.)  The subscriber records for the (618) phone number indicated that the account holder was "Boost Mobie," indicating it was a pre-paid account.  (Tr. 402:21-403:1; 403:8-11.)  No subscriber records exist for (618) after April 21, 2011.  (Tr. 464:23-465:9.)

During the investigation, the phone number (347) 805-8856 ("(347)") became of interest to law enforcement.  No subscriber records for (347) exist before April 27, 2011.  (Tr. 419:11-12.)  Examination of subscriber records for that number indicated that (347) had been in contact with thirteen of the same numbers as (618).  (Tr. 476:19-21.)  Notably, one of the phone numbers in common between (618) and (347) belonged to Lillian Duren, Petitioner's mother.  (Tr. 443:9.)  Further, the (618) and (347) numbers were both in contact with the 9-10 car service on Jamaica Avenue in Brooklyn.  (Tr. 524:5-7.)  Detective Jeffrey Raymond of the Nassau County Police Department ("NCPD") (Tr. 512:8-13), learned from 9-10 car service that the person using the (347) number was being picked up and dropped off in the same locations as the person who used the (618) number (Tr. 525:2-5).

Another phone number in contact with both (618) and (347) belonged to an individual named Jeffrey Green ("Green"). (Tr. 527:16-19.) Additionally, the person using the (618) number exchanged numerous calls with Green on the date of the murder, including the first call made after the murder. (Tr. 527:20-25.) Detective Raymond interviewed Green and determined that Green and Petitioner were friends. (Tr. 528:14-18.) Green gave a description of Petitioner, and described him as a male black, medium-skinned, muscular build, with several tattoos, including a cross with writing on his right arm. (Supp. Hr'g Tr., 42:2-8.)

Det. Frederick Black of the NCPD Electronics Squad (Tr. 477:10-13), continued to investigate the (347) number and found that it consistently pinged the same cell towers in Brooklyn as the (618) number. (Tr. 491:17-492:5.) Thereafter, via GPS coordinates, police tracked the (347) phone to a residential address in Brooklyn. (Tr. 529:13-22.) After monitoring the Brooklyn address, police observed Petitioner, who matched the description given by Green, entering and exiting said address. (Tr. 493:8-15.)

On June 28, 2011, Petitioner was arrested in his Brooklyn home, at the address where police had tracked the (347) number and transported Petitioner to the NCPD's Homicide Squad. (Tr. 549:15-550:12.) Prior to being given his Miranda warnings, police asked him for pedigree information including name, date of birth, phone

number, and address. (Tr. 551:15-21.) Petitioner stated that his phone number was (347) 805-8856. (Tr. 552:2-3.) Police then issued Petitioner <u>Miranda</u> warnings and continued questioning him, eliciting, (Supp. Hr'g Tr. 12:12-14:3), in particular, that Petitioner was the owner of the (347) number, and that he had lost the (618) phone.[3] (Tr. 563:6-22; Supp. Hr'g Tr. 17:16-19:6.)

II. <u>The Suppression Hearing and Trial</u>

On March 12, 2012, a suppression hearing was held in New York Supreme Court, Nassau County before the Hon. John L. Kase. (<u>See</u> Supp. Hr'g Tr.)

During the suppression hearing, Detective Raymond testified that he interviewed Green on June 9 and 15, 2011. (Supp. Hr'g Tr. 38:22-24; 43:16-19.) During the second interview, Detective Raymond showed Green still photographs taken of Petitioner exiting the Brooklyn address where police had tracked the (347) number. (Supp. Hr'g Tr. 43:16-44:20.) Detective Raymond testified that in response to being shown the photographs of Petitioner, Green "[i]n sum and substance, [ ] stated that we did our job, that we found him, but he didn't want to help anymore, that he had a family to worry about and he had a kid." (Supp.

---

[3] Petitioner willingly answered questions after being read his <u>Miranda</u> rights until Detectives mentioned Jeffrey Green. At that point, Petitioner requested an attorney. (Tr. 559:20-562:11.) Petitioner's statement was recorded on videotape, however, the videotape was not provided to the Court for review.

Hr'g Tr. 44:22-24.) When defense counsel questioned whether there was ever a negative identification by Green, Detective Raymond said there was not, and repeated his testimony as to Green's statements. (Supp. Hr'g Tr. 46:22-47:9.)

On July 6, 2012, following the suppression hearing and prior to trial, the prosecutor and defense counsel appeared before the Hon. William C. Donnino. (See J. Donnino Tr., D.E. 10:34.) The parties appeared to address an issue concerning the identification procedure conducted with Jeffrey Green. (J. Donnino Tr. 2:21-5:19.) Ultimately, while Detective Raymond had testified at the suppression hearing that Jeffrey Green made a positive identification of Petitioner, it had been previously disclosed to defense counsel by a different prosecutor that Green did not identify Petitioner. (J. Donnino Tr. 3:8-12.) The prosecutor conducting the suppression hearing was not aware of the previous disclosure at the time the hearing was conducted, although defense counsel had been in receipt of the disclosure letters prior to the hearing. (J. Donnino Tr. 3:15-23.) The court determined the hearing was not affected as witness Jeffrey Green was not being called by either party to testify at trial, thus any testimony regarding an identification procedure was a nonissue. (J. Donnino Tr. 3:24-4:3.)

Petitioner's jury trial began on October 2, 2012. The prosecution presented testimony of numerous law enforcement

witnesses involved in the investigation, expert witnesses, and civilian eyewitnesses, including victims Forrest and Fowler. (See Tr. 2:1-658:6). Forrest testified about the shooting and events before and after the shooting. (Tr. 273:7-293:24.) During his direct examination, Forrest was unable to conclusively identify Petitioner in court. (Tr. 292:15-293:17.) However, Forrest was able to recall numerous physical characteristics of the shooter, all of which were consistent with Petitioner's appearance. (Tr. 285:15-24, 292:1-14.) Additionally, when asked whether Petitioner was the person who shot and killed Prophet, Forrest testified that "[h]e resembles him extremely, yes." (Tr. 293:19-22.)

Dr. Gerard Catanese, Deputy Medical Examiner at the Nassau County Medical Examiner's Office, testified that he performed the autopsy on Prophet and described Prophet's bullet wounds, and that the bullet trajectory was consistent with Prophet being shot by an individual seated in the rear passenger seat. (Tr. 309:5-321:7.) Additionally, Robert Freese, a firearms examiner with the New York State Police Department Laboratory, testified that all cartridges and bullets collected at the scene were consistent with being fired from the same weapon. (Tr. 364:3-377:25.)

The prosecution called numerous witnesses who testified about cell phone evidence and drew connections between Petitioner's cell phone and the crime. The prosecution called

Barbara Prophet, Michael Prophet's sister-in-law, who provided Michael Prophet's phone number and testified that Michael Prophet occasionally sold marijuana out of his van. (Tr. 157:20-162:24.)

Detective Thomas Harjus of NCPD's Asset Forfeiture and Intelligence Command testified about his analysis of telephone records using Pen-Link software. (Tr. 461:9-476:21.) Detective Frederick Black of the NCPD's Electronics Squad testified as to his analysis of Petitioner's cell site records--showing that Petitioner's cell phone was in the vicinity of the McDonald's at the time of the shooting and tracing the phone's movement on the day of the shooting--and photograph surveillance of Petitioner at his Brooklyn address. (Tr. 477:10-511:19.)

Detective Raymond of the NCPD Asset Forfeiture Criminal Intelligence Rapid Response Task Force testified that he responded to the crime scene on the night of the incident and went to Mercy Medical Center to interview Hayden Forrest. (Tr. 512:10-516:24.) He also analyzed Prophet's and Petitioner's cell site records, which revealed that Petitioner's cell phone number was the last number Prophet called moments before he was killed (Tr. 518:1-9), and connected Petitioner to both the 618 and 347 cell numbers (Tr. 518:1-521:5). (See generally Tr. 512:10-540:7.) In addition, the prosecution introduced cell site records placing Petitioner's cell phone in the vicinity of the McDonald's parking lot at the time of the incident. (See generally Tr. 386:1-511:15.)

There was no defense case. (Tr. 578:11.) Defense counsel moved for a trial order of dismissal pursuant to Criminal Procedure Law § 290.10, which was denied by the court. (Tr. 578:21-25, 579:12-13.) Defense counsel and the prosecution delivered their summations to the jury, the court instructed the jury on the law, and jury deliberations commenced. (Tr. 587:17-642:11.) The jury convicted Petitioner of all charges, including Murder in the Second Degree, two counts of Attempted Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, Criminal Use of a Firearm in the First Degree, two counts of Assault in the First Degree, and Attempted Assault in the First Degree. (Tr. 652:13-653:19.)

III. The Sentence

On December 12, 2012, Petitioner was sentenced by the court. (See S., D.E. 9-8.) The prosecution requested the maximum sentence permissible under the law. (S. 6:20-24.) Defense counsel declined to address the court. (S. 6:25-7:2.) The court sentenced Petitioner to the maximum sentence, namely an indeterminate term of imprisonment of twenty-five years to life on the one count of murder in the second degree; two determinate terms of twenty-five years imprisonment on the two counts of attempted murder in the second degree, with each term of twenty-five years to be served concurrently, but consecutively to the twenty-five-to-life sentence; two determinate terms of imprisonment of fifteen years

on each of the two counts of criminal possession of a weapon in the second degree, to be served concurrently with the prior sentences imposed; a determinate term of twenty years on the one count of criminal use of a firearm in the in the first degree, to be served concurrently with the sentences already imposed; to a determinate term of imprisonment of twenty-five years on each of the two counts of assault in the first degree, also to be served concurrently with the sentences already imposed; and to a determinate term of fifteen years on the one count of attempted assault in the first degree, to be served concurrently with the sentences already imposed. (S. 7:7-9:12.) In addition, the court ordered that a DNA sample be taken and that Petitioner pay restitution in the amount of $11,841.79 by civil judgment, a mandatory surcharge of $300, a DNA fee of $50, and a crime victim's assistance fee of $20. (S. 9:13-23.)

On January 16, 2013, the court amended Petitioner's sentence to include twenty years of post-release supervision on each count of attempted murder in the second degree; twenty years of post-release supervision for each count of criminal possession of a weapon in the second degree; twenty-five years of post-release supervision for the crime of criminal use of a firearm; twenty-five years for the crime of assault in the first degree; twenty years of post-release supervision for the crime of attempted

assault in the first degree.  (Re. S., D.E. 9-9, 2:19-3:10.) The
original sentence remained otherwise unchanged.  (Re. S. 3:11-13.)

IV. <u>January 2013 Motion to Vacate Judgment</u>

On January 21, 2013 Petitioner filed a <u>pro se</u> motion to
vacate his judgment of conviction and set aside the verdict,
pursuant to New York Criminal Procedure Law § 440.10, based on
allegations that: (1) the evidence at trial was not legally
sufficient; (2) the evidence admitted at trial should have been
suppressed; (3) probable cause for arrest was insufficient;
(4) prosecutorial misconduct; (5) police misconduct; and (6) he
received ineffective assistance of counsel. (<u>See</u> Mot. to Vacate
J., D.E. 10-35.)  The trial court denied the motion in its entirety
and held that "[e]very claim made by the defendant is properly
heard on direct appeal, and as such may not be made by motion to
vacate. CPL 440.10(2)."  (N.Y. Sup. Ct. Order, D.E. 10-37 at 1.)
The court also noted that "the remainder of his claims . . . are
either unsupported, too vague, or too speculative to be reviewed
here."  (N.Y. Sup. Ct. Order at 1.)

On April 18, 2013, Petitioner filed a <u>pro se</u> motion for
leave to appeal the trial court's 440 decision to the Appellate
Division, Second Department, pursuant to CPL 450.15 and 460.15.
(<u>See</u> Mot. for Leave to Appeal, D.E. 10-43, at ECF 1).  On July 19,
2013, the Appellate Division denied Petitioner's application.
(<u>See</u> July 2013 App. Div. Order, D.E. 10-2.)

V.   The Appeal

On September 6, 2014, Petitioner, through counsel, appealed his conviction and sentence to the Second Department.  On direct appeal, Petitioner argued that: (1) the hearing court erred by not suppressing all his statements made to detectives during his interrogation on June 28, 2011; (2) the court's Sandoval ruling denied him a fair trial; (3) the court erred by not giving a circumstantial evidence instruction to the jury; (4) the court erred in admitting into evidence certain cell phone records; (5) the prosecutor committed misconduct; (6) the trial court erred in denying his motion for dismissal pursuant to C.P.L. 290.10 and the verdict was against the weight of the evidence; (7) his counsel was ineffective; (8) his sentence was illegal, excessive, and harsh; (9) the trial court erred in admitting certain autopsy photographs into evidence; and (10) his convictions and sentences under counts four, Criminal Possession of a Weapon in the Second Degree (New York Penal Law § 265.03(3)), and five, Criminal Possession of a Weapon in the Second Degree (New York Penal Law § 265.03(1)), should be vacated and set aside due to the conviction under count six, Criminal Use of a Firearm in the First Degree (N.Y. Penal Law § 265.09(1)(a)).  (See App. Div. Br., D.E. 10-3, at 38-66.)

The Second Department held that "the judgment is modified, on the law, by vacating the convictions of criminal

possession of a weapon in the second degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed." People v. Duren, 130 A.D.3d 842, 842, 13 N.Y.S.3d 512, 512 (2d Dep't 2015).

Regarding the legal sufficiency of the evidence claim, the Second Department found that Petitioner "failed to preserve for appellate review his challenge to the legal sufficiency of the evidence, as defense counsel did not base his motion to dismiss on any specific argument raised on appeal." Id. (citations omitted). In "viewing the evidence in the light most favorable to the People, [the Court found] that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt," and that in conducting "an independent review of the weight of the evidence" while according great deference to the jury's findings, "[it was] satisfied that the verdict of guilt was not against the weight of the evidence." Id. (internal citations omitted).

As to the ineffective assistance of counsel claim, the Second Department found that "it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel," and that "[s]ince the defendant's claim of ineffective assistance of counsel cannot be resolved without reference to matter[s] outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." Id. at 843 (internal citations omitted).

In addition, the Second Department found that "[t]he sentence imposed was not excessive." Id. (citations omitted). Finally, the court held that "defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit." Id.

Petitioner, through counsel, sought leave to appeal to the New York State Court of Appeals, which was denied on November 6, 2015. (See D.E. 10-21.) See also People v. Duren, 26 N.Y.3d 1039, 43 N.E.3d 379, 22 N.Y.S.3d 169 (2015).

VI.  October 2015 Motion to Vacate Judgment

On October 19, 2015, Petitioner filed a pro se motion to vacate judgment pursuant to CPL § 440.10(1)(b), (c), (d), and (h) in the trial court. Petitioner argued: (1) that he received ineffective assistance of counsel because (a) defense counsel failed to establish the legality of Petitioner's arrest and to successfully suppress statements as fruit of an illegal arrest, (b) defense counsel did not adequately prepare or ask important questions, (c) defense counsel did not investigate the scene of the shooting, which denied Petitioner a theory of defense consistent with his alleged innocence, (d) defense counsel neglected to renew objection to all evidence admitted subject to connection, (e) defense counsel failed to move for a mistrial, (f) defense counsel did not object to warrants being used for prior bad acts at the Sandoval hearing, (g) defense counsel did not

object to the court's circumstantial evidence charge, (h) defense counsel failed to cross-examine the People's eyewitness, (i) defense counsel neglected to raise the issue of police fraud based on forgery, falsifying documents, and misrepresentation, and (j) defense counsel did not object to prosecutor's alleged improper remarks; and (2) that his right to due process was violated by false testimony by witnesses and misconduct by prosecutors. (See Second Mot. to Vacate J., D.E. 10-38, at ECF pp. 4-5.) On December 24, 2015, Petitioner filed an addendum further detailing his ineffective assistance of counsel claims. (See Addendum Aff. in Supp., D.E. 10-39.)

On April 4, 2016, the Supreme Court, Nassau County issued an order finding that Petitioner's ineffective-assistance arguments were "previously raised on appeal to the Appellate Division and were found to be without merit and accordingly rejected by the Court. Accordingly, the same claims that were rejected by the Appellate Division are procedurally barred in his present motion." (See Apr. 2016 Order, D.E. 10-42, at 2) (internal citation omitted). In addition, the court observed that "since the defendant's ineffective-assistance argument relating to counsel's alleged failure to present a defense, cross examine a particular witness, request for a voluntariness charge, seek suppression of defendant's statements to police, object to the admission of phone records, etc. were previously raised on appeal

and rejected by the Appellate Division, these arguments are procedurally barred." (Apr. 2016 Order at 3 (internal citations omitted).) Finally, the court noted that it "examined all of the claims raised by defendant's 440.10 motion, his reply affirmation and the People's Opposition and concludes the defendant's motion is without merit and <u>Denied</u> in all respects." (Apr. 2016 Order at 3 (emphasis in original).)

VII.  <u>May 2016 Application to Appeal</u>

On May 16, 2016, Petitioner filed a <u>pro se</u> motion for leave to appeal to the Appellate Division, Second Department pursuant to C.P.L. §§ 450.15 and 160.16 and 22 N.Y.C.R.R. § 670.12(b) from Supreme Court's denial of his motion to vacate judgment of conviction. (<u>See</u> Aff. in Supp. of Appl. for Permission to Appeal, D.E. 10-7.) Petitioner argued: (1) that the trial court's summary denial of his motion to vacate judgment of conviction was improper; (2) that the trial court abused its discretion by failing to recognize the appellate court's finding that his contentions constituted a mixed claim of ineffective assistance of counsel; and (3) that the trial court improperly denied his claims of prosecutorial misconduct. (<u>See</u> Aff. in Supp. of Appl. for Permission to Appeal.) On July 22, 2016, the Second Department denied Petitioner's application. (<u>See</u> July 2016 App. Div. Order, D.E. 10-9.)

On September 30, 2016, the Court of Appeals dismissed Petitioner's application for leave to appeal "because the order sought to be appealed is not appealable under CPL 450.90(1)." (See Order Dismissing Leave, D.E. 10-26.)

VIII. December 2016 Writ of Error Coram Nobis

On December 6, 2016, Petitioner filed a pro se motion for a writ of coram nobis, in the Appellate Division, Second Department. (See Dec. 6, 2016 Pet. Writ of Error Coram Nobis, D.E. 10-10.) Petitioner argued that his appellate counsel's representation on direct appeal was deficient and prejudicial because of the omission of a "substantial" issue--that the trial court did not "give the defense meaningful notice of the contents of the jury notes"--that would warrant to court to grant a de novo appeal. (See Dec. 6, 2016 Aff. Supp. of Writ of Error Coram Nobis, D.E. 10-10, at ECF pp. 3-14.) On July 26, 2017, the Second Department denied Petitioner's application because he "failed to establish that he was denied the effective assistance of appellate counsel." People v. Duren, 152 A.D.3d 787, 56 N.Y.S.3d 473 (2d Dep't 2017). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on October 19, 2017. People v. Duren, 30 N.Y.3d 979, 89 N.E.3d 1261, 67 N.Y.S.3d 581 (2017).

On August 23, 2017, Petitioner filed a pro se motion for leave to reargue the Second Department's denial of his petition for a writ of error coram nobis to the Second Department. (See

Mot. for Reargument, D.E. 10-15.)  On January 9, 2018, the Second

Department denied this motion.  (See Jan. 2018 Order, D.E. 10-14.)

IX.  March 2018 Writ of Error Coram Nobis

On March 12, 2018, Petitioner again filed a pro se motion

for a writ of error coram nobis.  (See Pet. Writ of Error Coram

Nobis, D.E. 10-18.)  Petitioner argued that appellate counsel was

ineffective because it did not bring the following to the court's

attention: (1) that exhibits were given to the jury outside the

court's supervision, allowing the clerk and prosecutor to

determine the substance of the jury's request; (2) that trial

counsel was ineffective for failing to move for a trial order

dismissal on the grounds that the prosecution failed to meet their

burden; (3) that trial counsel was ineffective for failing to

suppress the police use of a pen register to locate him; and (4)

that the prosecutor's remarks during summations were improper and

racially inflammatory.  (See Mar. 12, 2018 Aff. Supp. Writ of Error

Coram Nobis, D.E. 10-18, at 3-16.)  On August 29, 2018, the Second

Department denied Petitioner's application because he "failed to

establish that he was denied the effective assistance of appellate

counsel."  People v. Duren, 164 A.D.3d 913, 913, 79 N.Y.S. 3d 924

(Mem), 924 (2d Dep't 2018).  Petitioner's application for leave to

appeal to the New York State Court of Appeals was denied on

December 18, 2018.  People v. Duren, 32 N.Y.3d 1125, 1125, 117

N.E.3d 822, 93 N.Y.S.3d 263 (N.Y. 2018).  This Petition followed.

DISCUSSION

## I. The Legal Standard

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." <u>Williams v. Taylor</u>, 529 U.S. 362, 399, 120 S. Ct. 1495, 1516, 146 L. Ed. 2d 389 (2000). A state prisoner seeking habeas corpus relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254, as amended by AEDPA, provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claims that was not adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States.

AEDPA, Pub. L. No. 104-132, 28 U.S.C. § 2254 Amendments. AEDPA established a deferential standard of relief, seeking to "avoid[ ] unnecessarily 'disturbing the State's significant interest in repose for concluded litigation, denying society the right to punish some admitted offenders, and intruding on state sovereignty to a degree matched by few exercises of federal judicial

authority.'" Virginia v. LeBlanc, 137 S. Ct. 1726, 1729, 198 L. Ed. 2d 186 (2017) (quoting Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011)) (brackets omitted). Accordingly, a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrara v. Collins, 506 U.S. 390, 401, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993). Ultimately, "the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); see also Hawkins v. Costello, 460 F.3d 238, 246 (2d Cir. 2006).

Therefore, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to] and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on question of law

or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S. Ct. at 1523. A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. at 1523. This standard does not require that all reasonable jurists agree that the state court was wrong; rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)). AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011)). Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." Harrington, 562 U.S. at 102, 131 S. Ct. at 786.

Assuming that a petitioner's claims are cognizable on habeas review, a petitioner must exhaust state court remedies before coming to federal court. Exhaustion of state court remedies

requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" See Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997)) (additional citation omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

In addition, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level on "independent and adequate" state procedural grounds. Coleman v. Thompson, 501 U.S. 722, 731-32, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991). This procedural bar applies even if the state court addressed the merits in the alternative, but decided the claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

To obtain review of procedurally barred claims, a state prisoner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence. <u>Coleman</u>, 501 U.S. at 750, 111 S. Ct. at 2565.

## II. <u>Application</u>

In this Petition, Petitioner renews many of the arguments made on his direct appeal, specifically that: (1) the hearing court erred by not suppressing all his statements to detectives regarding his cell phone number following his arrest; (2) the court's <u>Sandoval</u> ruling denied him a fair trial; (3) the court erred in failing to give a circumstantial evidence instruction; (4) the court erred in admitting into evidence certain cell phone records; (5) the prosecutor committed misconduct; and (6) trial counsel was ineffective. (<u>See</u> <u>generally</u> Pet.; App. Div. Br., at 38-53, 57-60.) Here, Petitioner also asserts that: (7) he was unlawfully searched and seized; (8) there was insufficient evidence to support his conviction; (9) appellate counsel was ineffective. (Pet. at ECF pp. 6, 17, 19.)

The Court acknowledges that <u>pro</u> <u>se</u> submissions require flexible construction, and so the Court must interpret them "'to raise the strongest arguments that they suggest.'" <u>Kirkland v. Cablevision Sys.</u>, 760 F.3d 223, 224 (2d Cir. 2014) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). But this leeway does not excuse Petitioner "'from compl[ying] with relevant rules

of procedural and substantive law,'" <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (quoting <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. 1981)), as he "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." <u>Vacco</u>, 126 F.3d at 415.

A. <u>Statement Claim</u>

Petitioner first claims that he is entitled to habeas relief because the statements he made giving his cell phone number to detectives following his arrest should have been suppressed as involuntary and in violation of <u>Miranda</u>. This claim was raised on direct appeal and rejected on the merits by the Appellate Division, which stated that "defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit." <u>Duren</u>, 130 A.D.3d at 843, 13 N.Y.S.3d at 512.

The state court in this case "expressly relied on a procedural default as an independent and adequate state ground" in denying Petitioner's unpreserved claim, but found in the alternative that it lacked merit. <u>Velasquez</u>, 898 F.2d at 9. As such, in abundance of caution, the Court proceeds to reach the merits of Petitioner's claim.

The Supreme Court has recognized an exception to <u>Miranda</u>'s protection against self-incrimination during interrogation for statements collected through routine booking

questions[4] that "appear reasonably related to the police's administrative concerns." Pennsylvania v. Muniz, 496 U.S. 582, 601-02, 110 S. Ct. 2638, 2650, 110 L. Ed. 2d 528 (1990). Routine booking questions include "those designed to elicit an arrestee's pedigree, such as the arrestee's name, aliases, date of birth, address, place of employment, and marital status." United States v. Chandler, 164 F. Supp. 3d 368, 387 (E.D.N.Y. 2016).

However, "'recognizing a booking exception to Miranda does not mean . . . that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions.'" Rosa, 396 F.3d at 210 (quoting Muniz, 496 U.S. at 602 n.14, 110 S. Ct. at 2650 n.14). Routine booking questions may not fall within the pedigree exception if the police should have known that asking the questions was "'reasonably likely to elicit an incriminating response.'" Rosa, 396 F.3d at 222 (quoting Rhode Island v. Innis, 446 U.S. 291, 301-02, 100 S. Ct. 1682, 1689 (1980)) (emphasis in original); see also Thompson v. United States, 821 F. Supp. 110, 120 (W.D.N.Y. 1992) ("the booking exception is not absolute").

---

[4] This exception is known as the "routine booking question exception," "booking exception," or "pedigree exception." See Rosa v. McCray, 396 F.3d 210, 214, 221-22 (2d Cir. 2005).

Determining whether a booking question falls within the pedigree exception to _Miranda_ requires careful consideration of "both the question itself and its relationship to the suspected crime." _United States v. Sezanayev_, No. 17-CR-0262, 2018 WL 2324077, at *12 (S.D.N.Y. May 22, 2018); _but see Rosa_, 396 F.3d at 222-23 (where a booking officer asked the defendant his real hair color, the court found the question was related to legitimate processing purposes, and not seeking incriminating information, although the suspect was described as having a different hair color than defendant at the time of his arrest); _see also United States v. Pabon_, 603 F. Supp. 2d 406, 409-10 (N.D.N.Y. 2009) (finding that the pedigree exception applied where police questioned defendant about his address after a search warrant was executed, and by identifying the search warrant location as his address, defendant gave incriminating information with respect to possessing the contraband recovered therein).

Here, questioning Petitioner about his cell phone number clearly fell into pedigree questions which are "normally and reasonably related to police administrative concerns," even if providing the phone number itself may have been incriminating. _Rosa_, 396 F.3d at 221-22. Additionally, the phone number being used at the time of the murder was the (618) number, and not the (347) number, which Petitioner stated was his current phone number at the time of his arrest. While evidence was presented during

trial demonstrating that the user of the (347) and (618) numbers were one and the same, Petitioner's admission relating to the (618) number alone was enough to tie him to the scene of the crime. The detective's inquiry into the (618) phone number occurred after Petitioner had been advised of his <u>Miranda</u> rights.

Accordingly, Petitioner's claim that the hearing court erred by not suppressing all his statements regarding his cell phone number is denied habeas relief.

B.  <u>Sandoval Claim</u>

Petitioner next claims that the trial court's <u>Sandoval</u> ruling violated his Constitutional right to a fair trial. The trial court held that should Petitioner testify, which he did not, the prosecution could cross-examine him regarding warrants for his arrest issued in unrelated matters on September 3, 2010 and October 4, 2010.

Initially, Petitioner brought this claim before the Appellate Division, and that court decided "defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit." <u>Duren</u>, 130 A.D.3d at 843. Notwithstanding any procedural bar, the Court finds that Petitioner's claim fails on the merits.

Courts in this Circuit apply "'a bright-line rule . . . barring habeas relief for allegedly erroneous <u>Sandoval</u> rulings in instances where a defendant elects not [to] testify.'" <u>Melendez</u>

v. LaValley, 942 F. Supp. 2d 419, 424 (S.D.N.Y. 2013) (quoting Shannon v. Senkowski, No. 00-CV-2865, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000)) (alterations in original); see also Reid v. Miller, No. 02-CV-2895, 2003 WL 22383097, at *5 (S.D.N.Y. Oct. 20, 2003) ("It is well established that in order to raise a claim for improper impeachment with a prior conviction, the defendant must testify at trial.").

Where, as here, the petitioner does not testify, "a court has 'no adequate non-speculative basis upon which to assess the merits of that claim.'" Sorrentino v. Lavalley, No. 12-CV-7668, 2016 WL 3460418, at *4 (S.D.N.Y. June 21, 2016) (quoting Shannon, 2000 WL 1683448, at *6). As such, Petitioner's Sandoval claim is denied.

## C. Unlawful Search and Seizure Claim

Petitioner claims that his Fourth Amendment rights were violated when he was subject to unlawful search and seizure. To that end, Petitioner claims that: (1) he was arrested without a warrant; (2) the legality of his arrest was never established; (3) the prosecution did not disclose that a cellphone was recovered from Petitioner's bedroom nor that it was going to use it at trial; (4) the prosecution did not disclose that the arrest occurred in Petitioner's home; and (5) no warrants were introduced at trial. (Pet. at ECF pp. 5, 15.)

As an initial matter, this Court deems Petitioner's Fourth Amendment claim exhausted, as no state court remedy remains, but notes that he has defaulted on the claim. Notwithstanding, the Court finds that Petitioner's claim fails on the merits.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046, 49 L. Ed. 2d 1067 (1976). And the Second Circuit has further elaborated that, under Powell,

> review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

Capellan v. Riley, 975 F.2d 67, 70, (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)).

New York has adequate corrective procedures for litigating Fourth Amendment claims set forth in CPL § 710.10 et seq. See, e.g., Capellan, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth

Amendment claims . . . as being facially adequate.'" (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989))).

Because New York provides an adequate statutory mechanism for reviewing Fourth Amendment claims, Petitioner must show that an "unconscionable breakdown" occurred. Such a breakdown occurs when the state court "failed to conduct a reasoned method of inquiry into the relevant questions of fact and law." Capellan, 975 F.2d at 71 (internal quotation marks and citations omitted). Additionally, "the court cannot say that it is an 'unconscionable breakdown' of the state's process that a [petitioner], who fails to raise a claim when he is initially given an opportunity for full and fair review, is not afforded a second chance to attack the same evidence on a different legal theory." Cappiello v. Hoke, 698 F. Supp. 1042, 1051 (E.D.N.Y. 1988) (emphasis in original).

Here, Petitioner's claims relate to the circumstances of his arrest and, mainly, that his arrest occurred in his home without a warrant. Petitioner's claim does not prevail as he is unable to establish that an "unconscionable breakdown" occurred here. A suppression hearing was conducted before Hon. John L. Kase prior to trial, wherein the prosecution presented testimony of two witnesses, Detective Nardo and Detective Raymond. (See generally Supp. Hr'g. Tr.) Based on the hearing, the judge determined that there was probable cause for Petitioner's arrest.

(See Resp't Opp. Aff., D.E. 9, at vii, n.3.)[5] While the location
of Petitioner's arrest was not specifically addressed during the
hearing, Petitioner certainly knew where he had been arrested, and
yet he did not raise that during the hearing.  As such, the Court
does not find that an "unconscionable breakdown" occurred here
where it was Petitioner who failed to raise this issue when given
a full and fair opportunity.

Further, to the extent that Petitioner claims that the
state court erred in failing to suppress evidence due to an
improper search or improper arrest charges, "[a] state court's
erroneous ruling on an issue of state evidentiary law rises to a
federal constitutional violation only if the error deprived the
defendant of a <u>fundamentally</u> <u>fair</u> trial." <u>Crawford v. Artuz</u>, 165
F. Supp. 2d 627, 635 (S.D.N.Y. 2001) (emphasis in original).

Petitioner further fails to demonstrate that he was
denied a fundamentally fair trial.  As an initial matter,
Petitioner fails to show that the suppression court's ruling
finding probable cause for his arrest was wrong.  Additionally,

---

[5] According to Respondent's Affidavit and Memorandum of Law in
Opposition to Petition for Writ of Habeas Corpus, on July 30,
2012 the hearing court issued an amended suppression hearing
decision which added the following language: "Based upon the
record generated at the combined . . . hearing conducted on
March 12, 2010, this [c]ourt finds that the defendant's arrest
on June 28, 2011 was based on probable cause."  However, it does
not appear that this amended decision was included with the
trial record for the Court's review.

had the location of Petitioner's arrest been addressed during the hearing, it is likely that the result would have been the same. New York State law provides several exceptions to the warrant requirement.  See generally Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).  Based on the facts of this case, it is reasonable that the exigent circumstances exception to the warrant rule is applicable, considering Petitioner was wanted for murder, the gun used during the shooting was never located and, as such, Petitioner could have been armed, or could have attempted to destroy the evidence.  Payton, 445 U.S. at 587, 100 S. Ct. at 1381.   As such, Petitioner fails to demonstrate that he was denied a fundamentally fair trial.   Accordingly, Petitioner's Fourth Amendment claim is denied.

D.   Circumstantial Evidence Charge Claim

Petitioner argues that he was denied a fair trial because, although the trial court issued a jury instruction on circumstantial evidence, the court neglected to specifically advise the jury that they "must scrutinize and weigh the evidence based on the circumstantial evidence standard."  (Pet. at 16.) Not only is this fair trial claim procedurally barred from habeas corpus review as it was decided on the state level on adequate and independent state grounds, but it relies entirely on New York law and does not implicate any federal constitutional right.

State court jury instructions are a matter of state law and do not raise a federal question, unless they implicate Fourteenth Amendment due process rights. Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973). Generally, improper jury instructions only violate due process if they "fail[ ] to give effect to [the] requirement" that the Government must prove every element of a charged offense beyond a reasonable doubt. See Middleton v. McNeil, 541 U.S. 433, 437, 124 S. Ct. 1830, 1832, 158 L. Ed. 2d 701 (2004) (per curiam). "[A] state prisoner making a claim of improper jury instructions faces a substantial burden." DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002). A petitioner must demonstrate that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" Id. at 1200-01 (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1737, 52 L. Ed. 2d 203 (1977)). Thus, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton, 541 U.S. at 437, 124 S. Ct. at 1832.

Here, a review of the jury charge in Petitioner's state criminal trial indicates that, taken as a whole, the jury was properly instructed on circumstantial evidence, reasonable doubt, and the elements of the crime the prosecution was required to

prove, and thus did not "so infect[ ] the entire trial that the resulting conviction violat[ed] due process." <u>Middleton</u>, 541 U.S. at 437, 124 S. Ct. at 1832. (<u>See</u> <u>generally</u> Tr. 607-43.) Additionally, Petitioner failed to object to the jury instruction before the trial court. <u>Roman v. Abrams</u>, 822 F. 2d 214, 220 (2d Cir. 1987) (finding that a state prisoner who failed to object to a jury instruction before the trial court procedurally forfeits that argument on federal habeas review); <u>see</u> <u>also</u> <u>Reyes v. Keane</u>, 118 F.3d 136, 138 (2d Cir. 1997).

Accordingly, Petitioner's circumstantial evidence jury charge claim is denied habeas relief.

E.   <u>Cell Phone Records Claim</u>

Petitioner claims that, by admitting numerous cell phone records into evidence, the court denied his right to a fair trial. (Pet. at 9.) Petitioner argues that a proper evidentiary foundation was not laid to admit the cell phone records into evidence, and that the records were entered subject to connection, but were never actually connected. Assuming, but not deciding, that Petitioner's claim is not procedurally barred, it also fails on the merits.

As a general matter, the admissibility of evidence in state court is wholly a matter of state law and is therefore not subject to habeas relief, barring a showing that Petitioner's due process rights were denied such that he was deprived a

fundamentally fair trial.  See Estelle v. McGuire, 502 U.S. 62, 75. 112 S. Ct. 475, 483, 116 L. Ed. 2d 385 (1991).

Here, Petitioner fails to demonstrate how the admission of various cell phone records denied him of a fundamentally fair trial.  Initially, from a review of the record, Petitioner cannot show the trial court's ruling was in error.  It has long been established that business records are an exception to the hearsay rule.  See People v. Rawlins, 10 N.Y.3d 136, 150 (2008); People v. Guidice, 83 N.Y.2d 630, 635 (1994).  Thus, Petitioner was not denied a fundamentally fair trial when cell phone records were properly admitted into evidence as business records.

Further, Petitioner was not denied a fundamentally fair trial because certain cell phone records were admitted into evidence "subject to connection."  Whether to enter evidence "subject to connection" is in the trial court's discretion.  See People v. Caban, 5 N.Y.3d 143, 151 (2005).  While Petitioner argues that the records were never connected, he failed to raise the issue before the trial court.

Additionally, the record reveals that the evidence was, in fact, sufficiently connected. As an initial matter, Petitioner, by his own video statement, admitted that both the (618) and (347) numbers belonged to him.  The prosecution presented testimony from Barbara Prophet, Prophet's sister-in-law.  (Tr. 158:23-24.)

Barbara Prophet established Prophet's phone number. (Tr. 161:3-4.)

Thereafter, employees, and record custodians, from Sprint Nextel, Verizon, and Time Warner Cable each testified. (See generally Tr. 383:17-438:25; 439:21-447:13; 447:17-458:7.) Sprint Nextel representative Norman Clark connected the cell phone subscriber records to Prophet's phone number, as testified to by Barbara Prophet, and further connected Prophet's subscriber records to Petitioner by testifying to various calls between Petitioner and Prophet on the date, and around the timeframe, of the murder. (Tr. 392:4-5; 410:7-23.) The Verizon representative, Arthur Behal, then established Petitioner's mother's, Lillian Duren, phone number as (718) 642-1883. Detective Harjus, testified that Lillian Duren and Petitioner communicated using both (618) 309-0096 and (347) 805-8856 numbers. (Tr. 443:8-12; 467:16-18.) Gerard Elizares ("Elizares"), the Time Warner Cable representative, then made connections between Petitioner and Jeffrey Green. Elizares testified to Green's phone number, and entered Green's subscriber records into evidence subject to connection. (Tr. 452:15-19; 450:18-25.) Those records were then sufficiently connected when Elizares testified that on April 17, 2011, the date of the murder, Petitioner and Green exchanged numerous phone calls using the (618), and later, they communicated via the (347) number. (Tr. 454:19-25; 455:17-22; 456:3-19.)

These phone records further tie Petitioner to both his (618) and (347) phone numbers, and specifically tie him to his (618) phone number on the date of the murder. Defense counsel argued in his summation that perhaps Petitioner lent his phone to someone, which is why the phone was in the vicinity of where the murder occurred. (Tr. 589:15-590:3.) However, the phone records demonstrate that Petitioner was in communication with Green shortly before and after the murder, and as such, it was highly unlikely that someone else was using his phone.

As such, the cell phone evidence was properly admitted, and thus this claim is denied.

F.    Prosecutorial Misconduct Claim

Petitioner alleges numerous instances of prosecutorial misconduct at his criminal trial. Petitioner's claims fall into four categories: (1) the prosecutor introduced improper evidence at trial; (2) the prosecutor made improper statements during her summation; (3) the prosecutor elicited false testimony; and (4) the prosecutor did not disclose the circumstances of Petitioner's arrest. Again, assuming, but not deciding, that Petitioner's claim is not procedurally barred, the Court addresses his claim on the merits. As stated below, Petitioner's claims are denied.

1.    Improper Trial Evidence

Petitioner claims that the prosecutor improperly handled the following evidence at trial: (1) the prosecutor elicited

hearsay testimony from Detective Harjus that he obtained the 347 number from a car service in Brooklyn; (2) the prosecutor elicited hearsay statements made by Jeffrey Green without giving defense counsel an opportunity to confront Green; and (3) the prosecutor submitted evidence regarding a common calls report, exhibit 89, which Petitioner asserts does not exist. (Pet. at 16-17.)

As discussed supra at 37, the admissibility of evidence in state court is wholly a matter of state law and is therefore not subject to habeas relief, barring a showing that Petitioner's due process rights were denied such that he was deprived a fundamentally fair trial. Estelle, 502 U.S. at 75, 112 S. Ct. at 483. The Court finds that Petitioner's alleged instances of purported misconduct did not deny him a fundamentally fair trial.

Initially, the common calls report was not introduced as evidence, but merely for identification to refresh witness recollection. (Tr. 476:3-21.) As such, Petitioner is unable to demonstrate he was prejudiced in any way, or denied a fair trial as a result, as the common calls report was not used as evidence against him at trial.

Petitioner further alleges he was deprived of a fair trial when he was unable to confront witnesses during the following instances of hearsay testimony: (1) Detective Raymond testified that he obtained the (347) number from a car service in Brooklyn;

and (2) the prosecutor elicited hearsay statements made by Jeffrey Green.  (Pet. at 16.)  These claims similarly fail.

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him."  U.S. CONST. AMEND. VI.  The Confrontation Clause prohibits admission at trial of out-of-court testimonial statements against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him.  Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004).

With respect to the testimony by Detective Raymond that he obtained the (347) number from a car service, Petitioner's claim is not supported by the trial record.  Detective Raymond testified that Duren's (347) number originated from Detective Harjus, through the Pen-Link system[6], not the car service, as alleged by Petitioner.  (Tr. 520:22-521:5.)  Therefore, the Confrontation Clause is not implicated here, as Detective Harjus was available and testified regarding his involvement in the investigation, and

---

[6] Pen-link is computer software used by law enforcement to analyze phone records.  (Tr. 462:20-22.)  Pen-link is useful in sorting data in different ways, including chronologically.  (Tr. 464:17-22.)  The Pen-link system can also be used to conduct a common call search between two phone numbers, as was the case here.  (Tr. 466:4-22 (Please note that pages 466 and 467 are reversed on the docket).)

how he discovered Duren's (347) number. (See generally Tr. 461:12-476:21.)

Petitioner further claims he was denied his Sixth Amendment rights with respect to Detective Raymond's testimony relating to his interview with Jeffrey Green. (Tr. 528:1-4.) However, Detective Raymond did not testify to any statements made by Jeffrey Green, but instead testified that, as a result of his interview with Jeffrey Green, he concluded that Green and Petitioner, the user of the (618) phone, were friends. (Tr. 528:8-529:5). In his testimony, Detective Raymond was seemingly deliberate in avoiding any statements Green made during the interview as Detective Raymond only testified to his conclusions based on his interaction with Green. Thus, no statements by Green, testimonial or otherwise, were elicited during Detective Raymond's testimony. (Tr. 512:5-541:2.) As such, Petitioner's Sixth Amendment right to confront witnesses is not implicated here.

Accordingly, Petitioner's claims for improper handling of evidence are denied.

2.    Improper Summation Commentary

Here, Petitioner claims that, during the prosecution summation, the prosecutor: (1) incorrectly stated that Forrest "testified that he brought the drugs to the deal;" (2) improperly stated that Petitioner asked for an attorney during his interrogation because he was "buried under the weight of the

43

evidence;" and (3) made "racially inflammatory remarks" in her summation.  (Pet. at 17.)

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991) (quoting <u>United States v. Young</u>, 470 U.S. 1, 11, 105 S. Ct. 1038, 1044, 84 L. Ed. 2d 1 (1985)).  To amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 195 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks and citation omitted). Rather, the prosecutor's comments "must represent 'egregious misconduct.'"  <u>Celleri v. Marshall</u>, No. 07-CV-4114, 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 647, 94 S. Ct. 1868, 1973, 40 L. Ed. 2d 431 (1974)); <u>see also</u> <u>United States v. Shareef</u>, 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" (citation omitted)).  Thus, to warrant relief, the Court must conclude that the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Darden</u>, 477 U.S. at 181, 106 S. Ct. at 2471 (quoting <u>Donnelly</u>, 416 U.S. at 643, 94 S. Ct. at 1871).

"[I]t is appropriate, on summation, to suggest inferences that could be drawn from facts in evidence and draw juror's attention to relevant factors in assessing witness credibility." Cooper v. Costello, No. 93-CV-5670, 1996 WL 1088929, at *4 (E.D.N.Y. July 23, 1996) (citing People v. Collins, 72 A.D.2d 431, 437-38, 424 N.Y.S.2d 954, 985 (4th Dept. 1980)). Additionally, the prosecution is permitted to rebut arguments raised during a defendant's summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" Readdon v. Senkowski, No. 96-CV-4722, 1998 WL 720682, at *4 (S.D.N.Y. Oct. 13, 1998) (quoting Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." Pilgrim v. Keane, No. 97-CV-2148, 2000 WL 1772653 at *3 (E.D.N.Y. Nov. 15, 2000) (citations omitted).

As to Petitioner's first claim, namely that the prosecutor incorrectly stated that Forrest testified that he brought the drugs to the deal, the Court does not find that the prosecutor's comment rises to the level of egregious misconduct. More specifically, the prosecutor stated "[Forrest] was there that night according to his testimony--and I submit to you the evidence in this case--because he was bringing the drugs to the deal." (Tr.

598:14-17.) It is permissible and appropriate for the prosecutor to make arguments by drawing inferences from the evidence presented at trial. _Cooper_, 1996 WL 1088929, at *4. In fact, during Petitioner's own summation, defense counsel appears to have drawn the same inference from the testimony and evidence. ("And apparently it was going to be a drug deal of some kind." (Tr. 588:15-16).) Thus, in this instance, the prosecutor's summation comment was fair argument and did not rise to the level of egregious misconduct.

With respect to the prosecutor's latter two comments, while the Court finds that the prosecutor's comments were inappropriate, the comments did not rise to the level of egregious misconduct.

In her summation, the prosecutor stated "[i]t must have been some other black man who was there that night. After all there must be millions of black men in the world, and there must have been hundreds of thousands who lived in Brooklyn." (Tr. 596:13-17.) While the prosecutor's statement was careless, the Court does not find the statement malicious, nor does it constitute egregious misconduct. During defense counsel's summation, he commented on Forrest's inability to identify Petitioner as the shooter in court and argued that the description given by Forrest lacked credibility. (Tr. 590:25-591:14.) While the prosecutor was permitted to rebut defense counsel's argument, the Court finds

her statements here were misguided, not intentionally inflammatory. This criminal case did not otherwise present issues involving race, such as racial bias by police, or cross-racial identification procedures. Instead, it is evident that the prosecutor was attempting to comment on the unlikelihood of another individual being the shooter by speaking in a grandiose manner. Again, while careless, the Court finds that the comment does not amount to egregious misconduct.

As discussed below, by far the most inappropriate comment made by the prosecutor was with respect to Petitioner's video statement. While the Court does not condone such comments, once again they do not rise to the level of egregious misconduct.

The Fifth Amendment protects individuals from self-incrimination. U.S. CONST. AMEND. V. It is a long-standing principle that prosecutors may not comment on a criminal defendant's silence or instruct a jury to infer that "such silence is evidence of guilt." See Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965). "The test governing whether a prosecutor's statements amount to an improper comment on the accused's silence in violation of the Fifth Amendment looks at the statements in context and examines whether they 'naturally and necessarily' would be interpreted by the jury as a comment on the defendant's failure to testify." U.S. Knoll, 16 F.3d 1313, 1323 (2d Cir. 1995); see also United States v. Bubar, 567 F.2d 192, 199

(2d Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977).

Here, the prosecutor stated "I am going to tell you to watch the end of the video [statement] again and watch what happens when [Petitioner] realizes he's been connected to both of those numbers, to Jeff Green, and to the murder. What happens? He asks for his attorney because he realizes he's buried under the weight of the evidence[7]." (Tr. 603:22-25-604:3.)

This comment was indeed inappropriate. However, in context, the Court does not find that the comment would "naturally and necessarily" be interpreted by the jury as a comment on Petitioner's silence. Knoll, 16 F.3d at 1323 (internal quotation marks omitted). In fact, the prosecutor was not commenting on Petitioner's silence, thereby asking the jury to draw the impermissible inference, but instead commented on his own words, which happened to voice the inference that is not permitted in the Fifth Amendment context. It was Petitioner's own words that he would bury himself if he continued talking to police which is the focus of the prosecutor's comment, rather than Petitioner's

---

[7] As stated supra at 8 n.3, the video statement by Petitioner was not made available for the Court's review. However, based on the testimony from the suppression hearing, after requesting an attorney, all questioning by police ceased, and Petitioner spontaneously stated in sum and substance, that there would be no sense in him talking anymore more because he would just bury himself. (Supp. Hr'g Tr. 14:2-6.) The video was played at trial for the jury. (See generally Tr. 559:9-562:14.)

request for an attorney, because Petitioner's own statement voiced the inference of guilt.

Additionally, the Court does not find that Petitioner has shown substantial prejudice as a result of the prosecutor's statements.  United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curium), cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982).  Petitioner faces a heavy burden that he cannot meet in light of the court's jury instructions advising them that "nothing either counsel may say in their summations is evidence in this case[.]"  (Tr. 587:9-11.)

As such, the Court does not find that the prosecutor's remarks constituted egregious misconduct.  Accordingly, Petitioner's claims for improper statements are denied.

### 3.   False Testimony

Petitioner argues his right to due process was violated when the prosecutor elicited false testimony on two occasions: (1) Detective Raymond testified falsely regarding his June 9, 2011 interview of Jeffrey Green; and (2) the prosecutor elicited false testimony regarding Forrest's description of the shooter.  (Pet. at 16-17.)

The threshold question is whether the witness in fact committed perjury.  United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001).  "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to

provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." Id. (citing United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116, 122 L. Ed. 2d 445 (1993)). "[P]etitioner has the burden of demonstrating by a preponderance of the evidence that the witness committed perjury." Boyle v. United States, 10-CV-2639, 2013 WL 6684995, at *2 (E.D.N.Y. Dec. 18, 2013) (quoting Zimmerman v. Burge, 492 F. Supp. 2d 170, 196 (E.D.N.Y. 2007)).

In the first instance, Detective Raymond testified regarding his interview, and positive identification procedure[8], with Green at Petitioner's suppression hearing. (Supp. Hr'g Tr. 38:22-39:2; 44:18-24; 46:22-47:9.) Ultimately, it was disclosed to the court that Green had also given a negative identification, which was addressed on the record before Hon. William C. Donnino. (J. Donnino Tr. at 2:1-5:16.) The court determined that the hearing outcome was unaffected as Green would not be making an identification at trial. Id.

Even if Petitioner was able to establish that Detective Raymond committed perjury, which the Court declines to decide

---

[8] Detective Raymond testified at the suppression hearing that, when shown a photograph of Petitioner, Jeffrey Green stated, "In sum and substance, . . . that we did our job, that we found him, but he didn't want to help anymore, that he had a family to worry about and he had a kid." (Supp. Hr'g Tr., 44:22-24.)

here,[9] he is unable to prove he was prejudiced at trial.  Green did not testify at Petitioner's criminal trial, nor did Detective Raymond, or any other witness at Petitioner's trial, testify to the identification procedure.  "Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury."  United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991).  The testimony at issue here was not presented to the jury, and as such it is an issue beyond the scope of the trial record.  Therefore, the testimony does not bear any materiality whatsoever to the jury's verdict.  As such, Petitioner was not denied his right to a fair trial with respect to the suppression hearing testimony regarding Green.

Petitioner further alleges that the prosecutor elicited false testimony as to the description given to police by eyewitness and shooting victim Hayden Forrest.  (Pet. at 16-17.)  But Petitioner fails to demonstrate, by a preponderance of the evidence, that the description of the perpetrator was false.  While Petitioner relies on Forrest's testimony, wherein he states

---

[9] In Respondent's brief, the People provided information that it was in fact Detective Nardo that informed the prior prosecutor about the negative identification.  (Resp't Opp. Aff. at vii, ¶ 24.)  As such, the Court does not have sufficient information before it to conclude that Detective Raymond was knowledgeable of the negative identification at the time he testified at the suppression hearing that Jeffrey Green positively identified Petitioner.

"[l]ike I told the detectives, I didn't really see his face[,]"
Forrest also testified to numerous descriptive characteristics of
the perpetrator, which were consistent with Petitioner's physical
appearance. (Tr. 279:21-280:3; 283:9-17; 285:15-24.) As such,
the prevailing issue is Forrest's credibility. Assessment of
witness credibility is an issue beyond the scope of this Court,
and it defers to the trial jury's assessment. Maldonado v. Scully,
86 F.3d 32, 35 (2d Cir. 1996). Accordingly, Petitioner's claim
that he was denied his right to due process fails.

    4.   Nondisclosure of Petitioner's Circumstances of Arrest

Petitioner claims he was denied the right to a fair trial
when the prosecutor failed to disclose that Petitioner was arrested
in his home, and that exhibit 103, Petitioner's (347) cell phone,
was recovered from his home. The Court disagrees.

First, the Appellate Division found this claim was
"unpreserved for appellate review and, in any event, without
merit." Duren, 130 A.D.3d at 843. Despite the potential
procedural bar, the Court reaches the merits and finds Petitioner's
claim fails.

In federal habeas corpus review, unless Petitioner can
demonstrate "actual prejudice," the error is harmless. Brecht v.
Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed.
2d 353 (1993). Assuming, but not deciding, that the prosecution

did, in fact, fail to disclose the location of Petitioner's arrest, Petitioner still fails to demonstrate that he was actually prejudiced as a result. As discussed <u>supra</u> at 31, with respect to his unlawful search and seizure claim, Petitioner had an opportunity to fully litigate the circumstances of his arrest at his suppression hearing. By not raising the issue during the suppression hearing, and as discussed herein, Petitioner was not denied a fundamentally fair trial, and as such, he cannot establish actual prejudice.

As such, Petitioner's claim that he was denied his right to a fair trial is denied habeas relief.

G.    <u>Ineffective Assistance of Trial Counsel Claim</u>

Petitioner claims he received ineffective assistance from trial counsel. He asserts what he perceives as numerous errors and failures by his trial counsel, including: (1) deficient performance at his suppression hearing; (2) failure to conduct an investigation; (3) failure to explore whether an individual shooting from the backseat could have inflicted the bullet trajectory as testified to by the Medical Examiner; (4) failure to object to numerous cell phone records; (5) failure to move for a mistrial or object and move to strike limiting instruction for the prosecution's use of exhibit 103; (6) failure to object to arrest warrants being used for prior bad acts to impeach Petitioner at the time of the <u>Sandoval</u> hearing; (7) failure to cross examine

witness Hayden Forrest; (8) failure to object when the prosecution requested the circumstantial evidence jury charge; and (9) failure to object to various comments made by the prosecutor in the People's summation. (Pet. at 18.)

Assuming, but not deciding, that all of Petitioner's claims are not procedurally barred, the Court proceeds to evaluate the merits of the Petitioner's ineffective assistance of counsel claims. As stated herein, the Court finds that Petitioner's claims provide no basis for relief.

As a general principle, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). After all, "there are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. In reviewing the totality of the evidence, the Court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011)). Bearing in mind this deferential standard, it is no surprise that "the great majority of habeas petitions that allege constitutionally ineffective

counsel" fail.  <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001).

To establish deficient performance, Petitioner must prove that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2064.  But even if Petitioner can show deficient performance, he must also establish prejudice--that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694, 104 S. Ct. at 2068.  A reasonable probability "lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" <u>Lindstadt</u>, 239 F.3d at 204 (quoting <u>Strickland</u>, 466 U.S. at 693, 104 S. Ct. at 2067–68).

### 1. <u>Ineffective Performance at Suppression Hearing</u>

Petitioner claims that trial counsel's suppression hearing performance constituted ineffective assistance for the following alleged failures: (1) counsel failed to establish the legality of Petitioner's arrest; (2) counsel failed to establish location of Petitioner's arrest; (3) counsel failed to litigate a warrant for Petitioner's April 16, 2011 arrest; (4) counsel failed to address that Petitioner was arrested in his home, taken to the police precinct, and questioned regarding his cell phone number prior to being read his <u>Miranda</u> rights; (5) counsel failed to

utilize or ascertain documents which contradicted the identification testimony by the detectives; (6) counsel failed to adversarially test the evidence, specifically the circumstances of the description given of the perpetrator; (7) and counsel failed to ask important questions at the suppression hearing. (Pet. at 18.)

Considering Petitioner's lack of any explanation or examples of questions to which he is referring, Petitioner's claim that counsel failed to ask important questions at the suppression hearing is addressed with the remainder of his suppression hearing claims.

As stated above, Petitioner must show both deficient performance and prejudice to prevail on his ineffective assistance claim. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner fails to establish either deficient performance or prejudice in his claims involving the circumstances of his arrest. While the record shows that defense counsel did not ascertain the location of Petitioner's arrest, Petitioner fails to articulate how he was prejudiced as a result, as probable cause is supported by the hearing record. Further, as stated supra at 35, there is little to no support that had the location and circumstances of Petitioner's arrest been addressed in the hearing, the outcome would have been any different, based on the prosecution's likelihood of success on an exigent circumstances argument.

Petitioner further claims that defense counsel failed to effectively adversarially test the evidence regarding his identification and the description of the perpetrator elicited at the hearing. (Pet. at 18.) It is unclear from the petition what is meant by "adversarially" testing evidence, however the Court interprets the claim as trial counsel failing to confront Detective Raymond and Detective Nardo at the hearing regarding the description and identification of Petitioner.

From a review of the hearing record, and the record at trial, defense counsel did cross examine Detective Nardo regarding the propriety of the photo-array procedure, and confronted Detective Raymond about whether Green gave a negative identification of Petitioner. (See generally Supp. H'rg Tr. 21:6-30:12; 46:22-47:9.) Petitioner's claim that trial counsel failed to adversarially test the evidence is belied by the record, and as such, fails.

Petitioner further includes in his claim for ineffective assistance of counsel that, after being arrested in his home, he was "brought to police headquarters and prior to being given [his] Miranda rights, was asked to disclose his cellphone number, which he disclosed as 347-805-8856. At the time o[f] [P]etitioner's arrest, the detectives were in possession of the cellphone records regarding 347-805-8856." (Pet. at 18.) The Court interprets Petitioner's claim as defense counsel's failure to litigate at the

suppression hearing, and at trial, the voluntariness of the statement and whether the statement was the product of a custodial interrogation.

For the reasons discussed supra at 27, Petitioner's pre-Miranda statement fell within the pedigree exception, and as such, Petitioner has not met his burden of showing that counsel's performance here fell below the objective reasonableness standard. Nor is it likely that the outcome would have been different, thereby actually prejudicing Petitioner. As such, Petitioner's claim with respect to his pre-Miranda statement is denied.

### 2.    Failure to Adequately Investigate the Case

Petitioner makes a series of claims in which he contends that his attorney failed to adequately investigate his case. (See Pet. at 18.) Specifically, Petitioner claims that he received ineffective assistance of counsel when his attorney failed to investigate the scene of the shooting and van where the shooting occurred and failed to explore the possibility that someone shooting from the back, passenger seat may not have been able to inflict a bullet trajectory from left to right. (Pet. at 18.)

It is clear that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. However, a reasonable investigation does not "compel defense counsel to investigate comprehensively every

lead or possible defense, or to scour the globe on the off-chance something will turn up." Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted). "'[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" Halo v. United States, No. 06-CV-5041, 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007) (quoting Simmons v. Gramley, 915 F.2d 1128, 1133 (7th Cir. 1990)).

Here, Petitioner makes only conclusory allegations that counsel did not fully investigate the matter, and as such, fails to articulate what the investigation would have produced. In addition, from a review of the record, the bullet trajectory is supported by witness testimony from both Hayden Forrest, who testified about where the shooter was seated, and the Medical Examiner who testified that the deceased, Michael Prophet, was likely shot by someone sitting in the backseat. (Tr. 279:3-8; Tr. 320:21-321:4.) Accordingly, Petitioner has not demonstrated that his attorney's conduct fell below an objectively reasonable standard, and thus, he cannot satisfy the Strickland standard.

### 3. Failure to Move For a Mistrial

To succeed on his claim for ineffective assistance of counsel with respect to his alleged error that counsel failed to

move for a mistrial, Petitioner must establish that counsel acted in a manner that "'cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064).

Here, Petitioner is unable to meet this burden. Petitioner alleges that trial counsel should have moved for a mistrial on the grounds that the prosecution used exhibit 103, Petitioner's physical cell phone recovered at the time of his arrest. (Pet. at 18.) It appears, from a review of the record, that trial counsel's trial strategy was not based on excluding the cell phone evidence, but rather that the police had arrested the wrong person for the crime. As such, trial counsel's decision not to move for a mistrial when exhibit 103, Petitioner's cell phone, was introduced for identification purposes only, arguably resulted from counsel's legal strategy.

Further, and as discussed herein, when to object and on what grounds are matters of trial strategy. See Broxmeyer, 661 F. App'x at 748; Cohen, 427 F.3d at 170. As it is clear that defense counsel's strategy was not to exclude cell phone evidence, but rather that Petitioner was not the individual who committed the crime, Petitioner's claim that trial counsel was ineffective for failing to object to cell phone records must also be denied.

Additionally, Petitioner cannot demonstrate that but for counsel's unprofessional error, the outcome of his trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2052. The effect of exhibit 103 being used for identification purposes only is not enough to demonstrate a "substantial and injurious" effect. <u>Brecht</u>, 507 U.S. at 637, 113 S. Ct. at 1721. As such, Petitioner fails to establish prejudice, and accordingly his claim that trial counsel erred when he failed to move for a mistrial is denied.

4.   <u>Failure to Object to Evidence of Prior Bad Acts at the Sandoval Hearing</u>

Petitioner claims that trial counsel was ineffective for failing to object to "arrest warrants being used for prior bad acts to impeach [ ] [P]etitioner at the time of the <u>Sandoval</u> hearing." (<u>See</u> Pet. at 18.) Petitioner fails to demonstrate either that counsel's performance at the <u>Sandoval</u> hearing fell below an objective standard of reasonableness, or that but for counsel's error, the outcome of the trial would have been different. <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

There were two arrest warrants proffered by the prosecution at the <u>Sandoval</u> hearing: a bench warrant from October 4, 2010 and a parole warrant from September 3, 2010. (Tr. 6:23-7:6; Tr. 8:6-16.) The record demonstrates that defense

counsel objected to both warrants, and in fact, the court reserved ruling on the admissibility of the October 4, 2010 warrant after defense counsel argued to the court that the warrant was related to an open case. (Tr. 7:10-8:4.) With respect to the September 3, 2010 warrant, defense counsel objected on the grounds that the parole warrant would be prejudicial to Petitioner, and the court agreed, and issued a ruling that the prosecution could only inquire whether Petitioner had a warrant for his arrest on September 3, 2010. (Tr. 8:21-9:1.)

The record simply does not support Petitioner's claim that his trial counsel's performance fell below the <u>Strickland</u> objective standard of reasonableness. Nor can Petitioner demonstrate any prejudice. As discussed <u>supra</u> at 30, Petitioner did not testify, so any potential for prejudice is merely speculative and cannot be examined here. Accordingly, Petitioner's ineffective assistance claim for failure to object to evidence of prior bad acts at the <u>Sandoval</u> hearing is denied.

5.    <u>Failure to Cross-Examine Hayden Forrest</u>

Petitioner claims that he was subject to ineffective assistance of counsel when his trial counsel failed to cross examine eye witness Hayden Forrest. The Court disagrees.

"Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." <u>U.S. v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987);

see also United States v. Bari, 750 F.2d 1169, 1182 (2d Cir. 1984). It is clear from the record that defense counsel's theory was misidentification, specifically that Petitioner was not the person who had committed this crime. (Tr. 589:21-590:3; 592:1-15.) Thus, the decision not to cross-examine witness Hayden Forrest, who was unable to successfully conduct an in-court identification, was well within the objective standard of reasonable conduct. Further, as no cross-examination of Hayden Forrest was conducted, the Court can only speculate as to the result, and therefore is unable to state that Petitioner was prejudiced by counsel's decision. Accordingly, Petitioner's claim that he was subject to ineffective assistance of counsel for failing to cross-examine a witness is denied.

6. Failure to Object to the Circumstantial Evidence Charge

Petitioner claims that trial counsel was ineffective for failing to take exception when the prosecution requested the circumstantial evidence jury charge. (Pet. at 18.) Because Petitioner is unable to show that the jury instructions were erroneous, as discussed supra at 35, and that counsel's failure to object to the circumstantial evidence jury charge constitutes ineffective assistance of counsel, Petitioner's claim is denied habeas relief.

Trial counsel's decision not to object to the prosecution's request for a circumstantial evidence charge did not amount "to incompetence under prevailing professional norms[.]" Richter, 562 U.S. at 105, 131 S. Ct. at 788 (internal quotation marks and citation omitted). Based on the prosecution's largely circumstantial case against Petitioner, it was unlikely that defense counsel would have won such an objection. Additionally, unless the trial court's jury instruction contains "clear and previously identified errors," counsel's failure to object to said instruction does not constitute an unreasonably deficient performance. Bloomer v. United States, 162 F.3d 187, 193 (2d Cir. 1998). As discussed herein, the Court does not find error with the jury instructions as given in this case. As such, Petitioner has failed to demonstrate that counsel's performance falls below an objective standard of reasonableness, and thus his claim of ineffective assistance of counsel must be denied.

7.  Failure to Object to Prosecution Summation

Once again Petitioner alleges a claim of ineffective assistance for conduct which falls squarely within the purview of trial strategy, and once more, Petitioner's claim is denied.

As discussed supra at 60, when to object and on what grounds are matters of trial strategy and cannot be challenged absent extraordinary circumstances. See Broxmeyer, 661 F. App'x 744, 748 (2d Cir. 2016); Cohen, 427 F.3d at 170. To object during

the prosecutor's summation may bring unnecessary attention to the remarks, and the decision by trial counsel not to object has been determined to be a reasonable trial strategy. <u>Broxmeyer</u>, at 748.

Additionally, as stated above, the Court finds that, while inappropriate, the prosecutor's summation comments did not result in actual prejudice. Accordingly, the Court finds that Petitioner has failed to meet <u>Strickland</u>'s second prong with respect to his ineffective assistance of counsel claim.

Petitioner's ineffective assistance of counsel claims are denied in their entirety.

H.    <u>Insufficient Evidence Claim</u>

Petitioner claims that there was insufficient evidence to support his conviction beyond a reasonable doubt because: (1) there was no scientific or factual evidence linking Petitioner to the crime; (2) there was no identification of the Petitioner by any witness nor was there evidence of his presence at the scene of the crime; (3) Detective Fred Black testified on cross-examination that the (618) cell number, at the time of the shooting, was outside of the range of the cell phone towers capable of pinging the McDonald's parking lot; (4) the police improperly operated under the assumption that the "last number recorded on the decedent's phone" was the shooter; (5) "[n]o motive or reason was given for the shooting"; (6) Prophet's injuries were impossible to inflict from the rear passenger seat; (7) "Detective Black

testified to the speculative nature of cell tower evidence"; and (8) no evidence existed as to whether the shooter knew of McLeod's presence at the scene. (Pet. at 17-26.)

On Petitioner's direct appeal, the Second Department determined that, because defense counsel failed to articulate any specific argument in his motion to dismiss, Petitioner did not preserve his legal sufficiency claim. Duren 130 A.D. at 842; see also CPL 470.05(2). However, the appellate court still addressed Petitioner's claims on the merits. Upon review of the record, the Second Department was "satisfied that the verdict of guilt was not against the weight of the evidence." Duren, 130 A.D. at 842; see People v. Romero, 7 N.Y.3d 633, 638, 859 N.E.2d 163, 166, 826 N.Y.S. 2d 163 (2006).

Accordingly, Petitioner's legal insufficiency claim is procedurally barred from this Court's review. It has been well established that the failure to preserve a claim for appellate review is considered an independent and adequate state ground, and furthermore, even if the state court addresses the merits "in any event", the claim is procedurally barred. See Harris v. Reed, 489 U.S. 255, 264, 109 S. Ct. 1038, 1044, 103 L. Ed. 2d 308 (1989); see also Velasquez, 898 F.2d at 9.

Even absent the procedural bar to Petitioner's legal sufficiency claim, Petitioner is not entitled to habeas relief on the merits of his claim. To evaluate the sufficiency of the

evidence, "[a] federal court must look to state law to determine the elements of the crime." <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999).

At the heart of Petitioner's claim is that he was not the person who committed the crime. As such, the Court looks to the elements of the top count charged, Murder in the Second Degree. To convict Petitioner of Murder in the Second Degree, the prosecution was required to prove that Petitioner, with intent to cause the death of another person, caused the death of such person. N.Y. PENAL LAW § 125.25(1). While Petitioner argues that there was not enough evidence tying Petitioner to the crime, the Court disagrees.

When determining whether there was sufficient evidence to support a conviction, the Court considers whether there was "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 313, 99 S. Ct. 2781, 2785, 61 L. Ed. 2d 560 (1979). "[A] challenge to the sufficiency of the evidence presents the question 'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (quoting <u>Jackson</u>, 443 U.S. at 307, 99 S. Ct. at 2783 (emphasis in original)). Moreover, "[a] defendant challenging a conviction on sufficiency

grounds bears a heavy burden" and "[t]he reviewing court must consider the evidence in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." <u>United States v. Hernandez</u>, 85 F.3d 1023, 1030 (2d Cir. 1996).

At Petitioner's criminal trial, the prosecution relied on both testimonial and circumstantial evidence. Through testimony and cell records, the prosecution was able to show that the (618) cell phone, which Petitioner admitted was his cell phone number, was present in the vicinity of the scene of the shooting. It is unlikely that Petitioner lent out his (618) cell phone at the time, because calls made shortly before and after the shooting were to Jeffrey Green, an individual the prosecution established was Petitioner's friend. Additionally, the last call before the murder on the (618) number was from Michael Prophet, the deceased, which was consistent with Forrest's trial testimony.

Hayden Forrest testified that the shooter was seated in the backseat at the time he heard gunshots, and Prophet was seated in the driver's seat. In addition to evidence that one of the bullets entered through the backseat and exited through the front seat, the Deputy Medical Examiner testified that the trajectory of the bullet, which entered Prophet through his back, was consistent with a shot being fired by someone in the backseat of the car and firing at a person leaning forward in the front seat. (Tr. 320:21-

321:4.) Additionally, the prosecution presented testimony from ballistics expert Detective Robert Freese, who testified that the evidence collected from the scene supported that all bullets were fired from the same gun. (Tr. 364:3-378:11.)

Forrest's testimony further established that any rational juror could find that it was Petitioner seated in the backseat, and Petitioner who was the shooter. While there was no in-court identification procedure affirmatively identifying Petitioner as the shooter, when asked whether Petitioner was the shooter, Forrest did testify that "[h]e resembles him extremely, yes." (Tr. 293:22.) Additionally, Forrest provided numerous identifying characteristics during his testimony that matched Petitioner's physical description. (Tr. 283:9-17; 285:15-24.) The credibility of Forrest's testimony describing Petitioner as the shooter is a matter for the jury to determine. <u>Maldonado</u>, 86 F.3d at 35.

As such, drawing all inferences in favor of the prosecution, based on the above evidence it is not unreasonable that any rational juror could have found Petitioner guilty beyond a reasonable doubt. As such, Petitioner's legal sufficiency of the evidence claim is denied habeas relief.

I. <u>Ineffective Assistance of Appellate Counsel Claim</u>

Petitioner largely reasserts his prosecutorial misconduct and ineffective assistance of trial counsel arguments

in his ineffective assistance of appellate counsel claim. To support his claim, Petitioner never actually references his appellate counsel. (Pet. at 19.) However, affording Petitioner's arguments the flexible construction required under Kirkland, this Court finds that, Petitioner alleges that his appellate counsel was ineffective largely due to his failure to make the appellate court aware of every alleged "fundamental defect" that amassed at trial. (Pet. at 19.) The alleged "fundamental defect[s]" that appellate counsel failed to argue are: (1) the court failed to read the contents of the jury's request into the record; (2) the court failed to apprise counsel of its response to the jury's inquiry; (3) the prosecution responded to a jury request without first consulting with defense counsel; (4) failure to raise that trial counsel was ineffective for failing to give a specific ground for trial order of dismissal and failing to suppress the police use of a pen register to locate defendant; (5) prosecutorial failure to prove their burden as a matter of law; and (6) improper racial remarks during summation. (Pet. at 19.)

The Appellate Division, citing Jones v. Barnes, found that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." Duren, 164 A.D.3d at 913; see also Jones v. Barnes, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). The Court finds the Appellate Division's

decision was not contrary to, and did not involve an unreasonable application of, the Strickland standard.  28 U.S.C. § 2254(d)(1).

Ineffective assistance of appellate counsel claims are evaluated using the same framework established by the Supreme Court in Strickland.  See Mayo v. Henderson, 13 F.3d 529, 533 (2d Cir. 1994) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2064); Mabee v. Phillips, No. 05-CV-4182, 2009 WL 3644077, at *5 (S.D.N.Y. Nov. 4, 2009).  To show "that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."  Mayo, 13 F.3d at 533.  Rather, a petitioner can only "establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Id.

Additionally, in Jones v. Barnes, the Supreme Court stated that it is up to the professional judgment of counsel to determine which points to argue, and recognized the importance of "winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues."  Barnes, 463 U.S. at 751-52, 103 S. Ct. at 3312-13.

Regarding Petitioner's claims involving the jury notes, specifically that the court failed to read the contents of the

jury's request into the record, the court failed to apprise counsel of its response to the jury's inquiry, and the prosecution responded to a jury request without first consulting with defense counsel, the Court finds that the Appellate Division reasonably applied the Strickland standard.

The Court of Appeals established guidelines in People v. O'Rama outlining the ideal procedure for trial courts to communicate with the jury during deliberations. See People v. O'Rama, 78 N.Y. 2d 270, 277-78, 579 N.E. 2d 189, 192-93, 574 N.Y.S. 2d 159 (1991). When the trial court receives a written communication from the jury, ideally the court should: (1) mark the note as a court exhibit; (2) read the note verbatim into the record, in the presence of counsel, before the jury is present; (3) give counsel an opportunity to suggest responses; (4) inform counsel of the court's intended response; and (5) read the note in open court in the presence of the jury. O'Rama, 78 N.Y. 2d at 277-78.

From a review of the record, while the trial court did not follow the guidelines established in O'Rama exactly, the court substantially apprised the attorneys of the substance of the notes in this case, and each time defense counsel failed to suggest any response, or object to the court's proposed responses. (See generally Tr. 644:3-647:16; 647:19-648:18.)

72

As such, Petitioner does not demonstrate that appellate counsel's representation fell below the objective reasonableness standard, as the claims asserted with respect to the jury notes lack merit, and further, Petitioner has failed to demonstrate any prejudice as a result of appellate counsel failing to advance these claims. Thus, these claims are denied.

Petitioner further asserts that appellate counsel failed to argue that trial counsel was ineffective for failing to state a specific ground for his Criminal Procedure Law 290.10 trial order of dismissal motion, and for failing to suppress the pen register used to locate Petitioner. (Pet. at 19.) As discussed supra at 60, these decisions by trial counsel fall within the gambit of strategic decisions. See Broxmeyer v. United States, 661 F. App'x at 748; United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005). Courts are "reluctant to second guess matters of trial strategy simply because the chosen strategy has failed." United States v. Aulet, 618 F.2d 182, 189 (2d Cir. 1980). Therefore, the Appellate Division did not unreasonably apply the Strickland standard here, where appellate counsel was likely to fail by advancing arguments based in trial counsel's strategy. And as such, Petitioner's claims similarly fail.

Further, Petitioner reasserts his insufficient evidence and prosecutorial misconduct claims here, and, again, they are denied. (Pet. at 19.) For the reasons discussed herein,

Petitioner cannot demonstrate how he was prejudiced, and as such, fails to meet the Strickland standard.

Accordingly, Petitioner's ineffective assistance of appellate counsel claim is denied in its entirety.

CONCLUSION

Petitioner's Petition for a writ of habeas corpus (D.E. 1) is DENIED.

The Court declines to issue a certificate of appealability because the Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2).

The Court also certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is respectfully directed to mark this case CLOSED and mail a copy of this Order to the pro se litigant.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: January __30__, 2020
       Central Islip, New York